IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | |
|---|---|
| KELLY TURAN BROOKS, # 42586-037 | PETITIONER |
| V. | CIVIL ACTION NO. 5:08cv235-DCB-MTP |
| BRUCE PEARSON, Warden | RESPONDENT |

REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Kelly Turan Brooks for a Writ of Habeas Corpus [1] (the "Petition"), filed under 28 U.S.C. § 2241. Having considered the submissions of the parties, all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be dismissed with prejudice.

Background

Petitioner Kelly Turan Brooks was convicted of conspiracy to distribute in the United States District Court for the District of Maryland and on October 27, 2006, was sentenced to serve 72 months in the custody of the federal Bureau of Prisons ("BOP"), followed by 5 years of supervised release. At the time he filed his Petition, Petitioner was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"). Petitioner is currently incarcerated at the Federal Correctional Institution in Texarkana, Texas and is projected to be released from BOP custody on April 23, 2012. *See* Ex. 1 to Answer [18].

In his Petition filed on July 9, 2008, Petitioner challenges an Incident Report dated October 5, 2007, charging him with Encouraging a Group Demonstration in violation of Bureau Code 212, and a related disciplinary proceeding in which he was found guilty of the offense. Specifically, on the afternoon of October 4, 2007, while being housed at the Federal Correctional

Institution in Edgefield, South Carolina,[1] Petitioner requested to speak to Ms. Shannyl Turner, Food Service Administrator, about the conditions in Food Service.  Specifically, Petitioner expressed his concerns about sanitation, meal portions, and an inadequate number of bathrooms in Food Service.  He stated that he was going to help "his people" out and complain about the conditions at Edgefield.  He stated that he and the other inmates were not going to tolerate these conditions anymore.  Petitioner stated that he was going to file paperwork along with the other inmates and that the situation was not going to be taken lightly.  He stated that he was about to transfer and he was going to continue to represent the other inmates after he was transferred.  Petitioner expressed his concerns to Ms. Turner, Ms. V. Wertz, Food Service Assistant, and Anthony Stacks.  *See* Incident Report, Ex. A to Petition [1-2]; October 5, 2007 Memoranda from Ms. Turner, Ms. Wertz, and  Ex. 3 to Answer [18]; Affidavit of Anthony Stacks, Ex. 1 to Answer [18].

On October 5, 2007, BOP staff delivered a copy of the Incident Report to Petitioner, and Petitioner was advised of his right to remain silent.  *See* Ex. 3 to Answer [18-4] at 11-12.  The Unit Disciplinary Committee ("UDC") conducted a hearing on October 9, 2007,[2] where Petitioner admitted that he spoke out about the conditions of Food Service but denied the remaining allegations.  The UDC referred the charges to the Discipline Hearing Officer ("DHO") for disposition.[3]  *Id.*  Petitioner acknowledged that he was advised of his rights afforded at the hearing before the DHO.  *Id.* at 14.  Petitioner waived his right to a staff representative, but a staff

---

[1] Petitioner was apparently transferred to FCC Yazoo City at some point following the challenged disciplinary proceedings.

[2] 28 C.F.R. § 541.15(b) provides that the initial hearing will ordinarily be held within three work days of the day staff become aware of the inmate's involvement in the incident.

[3] *See* 28 C.F.R. 541.15 ("When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer for further hearing.").

2

representative was still appointed. Petitioner did not request any witnesses to testify on his behalf. *Id.* at 13-15.

The DHO hearing was held on October 22, 2007. At the hearing, Petitioner denied the charges, stating "It's not true. I told here [sic] there were problems in the kitchen, and that they were violating policy. I told her a lot of inmates had come to me and asked why food service had issues. I never told them I was a spokesperson for a group of inmates." *Id.* at 6-7. Petitioner did not request any witnesses to testify on his behalf. *Id.* at 6-7, 13-15.

The DHO reviewed the evidence presented, including the memoranda from Ms. Turner and Ms. Wertz and the statement by Petitioner at the hearing, ultimately concluding that "greater weight" should be given to the written statements of the BOP staff. Accordingly, the DHO found Petitioner guilty of the charged offense and imposed the following sanctions: loss of commissary privileges for one year; disallowance of twenty-seven days of Good Conduct Time ("GCT"); thirty days disciplinary segregation; and loss of visitation privileges for six months.[4] *See* Ex. 3 to Answer [18-4]; *see also* 28 C.F.R. § 541.13 (setting forth prohibited acts and disciplinary severity scale).

In the instant Petition, Petitioner alleges that he was issued an "unsubstantive" incident report in retaliation for voicing concerns about food services and that there was no evidence of a group demonstration, and that his unit counselor tried to coerce him into pleading guilty. Petitioner asks that the incident report be expunged, that his GCT be restored, that his visitation privileges be restored, that the Food Services Administrator be reprimanded, and that his points

---

[4] The DHO explained the reasons for the sanctions:

Based on my correctional experience, I know that encouraging a group demonstration is a serious violation because of the potential for violence. The behavior is a threat to staff and inmates. The sanctions I imposed were imposed to demonstrate the seriousness of the act and to deter future misconduct.

*See* Ex. 3 to Answer [18-4].

are adjusted "to reflect the accurately status of camp and judicial recommadation (sic) to FPC Butner, NC or FPC Bennettsville, SC." *See* Petition [1] at 5; Affidavit [2]. Petitioner has exhausted his administrative remedies. *See* Petition [1-2] at 7-13; Affidavit of Esther Slater, Ex. 3 to Answer [18-4] at 1-5.

<u>Analysis</u>

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[5] However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part

---

[5]However, with respect to the other sanctions imposed on Petitioner (disciplinary segregation and loss of commissary and visitation privileges) no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's institutional privileges, as well as changes in custodial status, do not provide a basis for a constitutional claim. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Lewis v. Dretke*, 54 Fed. App'x 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest") (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights)); *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Williams v. Geo Group, Inc.*, No. 4:08-cv-67- HTW-LRA, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."). Moreover, the court notes that prisoners have no constitutional right to be incarcerated in a certain facility, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and "[c]lassification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).

of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. As set forth below, Petitioner clearly received these protections.

First, Petitioner was provided more than 24 hours of notice of the charges against him, as the Incident Report was delivered on October 5, 2007, and the DHO hearing was conducted by an impartial decision maker on October 22, 2007. *See* Exs. 2 & 3 to Answer [18]. Second, Petitioner was provided an opportunity to present documentary evidence and testimony from witnesses. He made a statement on his behalf, and did not request any witnesses.

Third, Petitioner was informed of his right to the assistance of a staff representative in the Inmate Rights at Discipline Hearing form read to and signed by Petitioner on October 9, 2007. *See* Ex. 3 to Answer [18-4] at 14. Although Petitioner waived that right, a staff representative, Officer Smith, was appointed. *Id.* at 15. Petitioner argues, however, that he never met with his appointed staff representative and thus was not given the opportunity to present potential relevant evidence. *See* Reply [19]. Nevertheless, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding.[6] *See Tewell v.*

---

[6]To the extent that Petitioner claims that the BOP's alleged failure to provide him with a staff representative somehow violated BOP regulations or policy (*see*, *e.g.*, Memorandum at 6-8) such a claim is unavailing. "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to

5

*Outlaw*, No. 2:08CV00136 SWW/JTR, 2008 WL 4216423, at * 4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996)); *see also Marshall v. Champion*, 82 F.3d 426, 1996 WL 187535, at * 2 (10th Cir. Apr. 18, 1996); *Watt v. Thaler*, Civil Action No. 4:09-CV-412-Y, 2010 WL 99352, at * 3 (N.D. Tex. Jan. 11, 2010) (citing *Baxter v. Palmigiano*, 4256 U.S. 308, 315 (1976); *Wolff*, 418 U.S. at 570)). Rather, due process requires only that inmates be provided with a staff representative where they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Tewell*, 2008 WL 4216423, at *4 (citing *Wolff*, 418 U.S. at 570); *see also Evans v. Henman*, 925 F.2d 1468, 1991 WL 19882, at *2 (7th Cir. Feb. 20, 1991); *see also Hart v. Whalen*, No. 3:08-CV-00828, 2009 WL 5173487, at *7 (M.D. Pa. Dec. 22, 2009). Petitioner does not allege that he is illiterate (and his pleadings belie such an allegation). Nor are the issues in this case complex. Thus, he has not established a violation of due process on this basis.

Finally, Petitioner was provided a written statement of the evidence the DHO relied on and the reasons for the disciplinary actions. *See* Ex. B to Petition [1-2] at 2-6.

Petitioner has presented no evidence supporting his claim that his Counselor Holland tried to coerce him to plead guilty. Regardless, Petitioner pled not guilty to the charges. *See* Ex. 3 to Answer [18-4] at 6.

To the extent that Petitioner challenges the evidence upon which his guilty finding was based, in order for a prison disciplinary decision to pass constitutional muster there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is

---

comply with their own regulation is not a constitutional violation).

satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456.

In the instant case, the DHO reviewed the evidence presented, including the incident report and investigation, the memoranda from Ms. Turner and Ms. Wertz, and the statement by Petitioner at the hearing, ultimately concluding that "greater weight" should be given to the written statements of the BOP staff. *See* Ex. 3 to Answer [18-4]. As to Petitioner's claim that the incident report was issued in retaliation for his complaint, the DHO found that "staff gain nothing by perpetrating a falsehood against [the Petitioner]" and further noted the staff's legal and moral obligation to tell the truth. The DHO further found as follows:

> [H]istorically in BOP institutions, when inmates attempt to organize/represent other inmates via form letters, cop outs, etc., things escalate and have the potential, to turn into riots, work stoppages, etc. Food service concerns, are but one factor of riots in correctional institutions, inmates have the right to file administrative remedies, and write letters, however, [they] do not have the right to represent a group of inmates or to organize other's (sic). The DHO fully believes [Petitioner was] attempting to encourage a group demonstration by [his] actions of trying to represent other inmates.

*Id*. at 8-9.

"Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). In this case, there was clearly "some evidence" to support the DHO's finding. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due

7

Process Clause); *Hudson*, 242 F.3d at 536-37 (holding that the information provided in a written incident report can, standing alone, satisfy the "some evidence" standard). As there was "some evidence" to support the DHO's decision, it must be upheld.

RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Kelly Turan Brooks's Petition for a Writ of Habeas Corpus [1] be denied and dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 29th day of March, 2010.

                                                           s/Michael T. Parker
                                                           United States Magistrate Judge